# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROCHELLE MEYER, ROTH IRA CUSTODIAN, On Behalf of Herself and All Others Similarly Situated, | Case Number: 03-12214 (WGY) |
| Plaintiff, | |
| v. | |
| PUTNAM INTERNATIONAL VOYAGER FUND n/k/a PUTNAM INTERNATIONAL CAPITAL OPPORTUNITIES FUND, PUTNAM EUROPE GROWTH FUND n/k/a PUTNAM EUROPE EQUITY FUND, PUTNAM INTERNATIONAL GROWTH FUND n/k/a INTERNATIONAL EQUITY FUND, PUTNAM GLOBAL EQUITY FUND, PUTNAM INVESTMENT MANAGEMENT TRUST, PUTNAM INVESTMENT MANAGEMENT LLC, MARSH & MCLENNAN CORP., INC., OMID KAMSHAD, and JUSTIN M. SCOTT, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND THIS ACTION TO THE SUFFOLK SUPERIOR COURT, DEPARTMENT OF THE TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS

## INTRODUCTION AND BACKGROUND

On October 31, 2003, plaintiff filed a class action complaint in Superior Court Department of the Trial Court of the Commonwealth of Massachusetts alleging a breach of fiduciary duty claim against Putnam Investment Management Trust, Putnam Investment Management, LLC, Marsh & McLennan Corp., Inc. Omid Kamshad, Justin M. Scott and four international Putnam mutual funds: 1) Putnam International Voyager Fund n/k/a Putnam International Capital Opportunities Fund; 2) Putnam Europe Growth Fund n/k/a Putnam Europe Equity Fund; 3) Putnam International Growth Fund n/k/a Putnam International Equity Fund; and 4) Putnam Global Equity Fund.

Plaintiff alleges that defendants breached their fiduciary duties to plaintiff and the proposed class of holders of these four Putnam mutual funds by allowing market timing and self-dealing in certain of Putnam's international mutual funds, in order for Putnam and certain of its own employees and other select Putnam fund investors to benefit by millions of dollars, all at the expense of defendants' other mutual fund shareholders – namely, plaintiff and the Class. The complaint alleges that market timing is a drag on a mutual fund's long term performance, negatively affects the fund's shareholders on a dollar-for-dollar basis and reduces the value of shares in the mutual funds. By allowing such conduct, defendants received substantial fees and other income for themselves and their affiliates.

Although plaintiff's only claim is for a common law breach of fiduciary duty, and is brought only on behalf of **holders** of the four Putnam mutual funds at issue, on November 12, 2003, defendants removed plaintiff's complaint to this Court pursuant to the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §§77p(b) and (c), 78bb(f)(1) ("SLUSA"). However, as set forth below, SLUSA does not apply to this action and therefore, it should be remanded to

1

state court. Indeed, for SLUSA to preempt plaintiff's state common-law claim, defendants must show that plaintiff alleges "an untrue statement or omission of a material fact <u>in connection with the purchase or sale</u> of a covered security or that the defendant used or employed any manipulative or deceptive device or other contrivance <u>in connection with the purchase or sale</u> of a covered security." *Id.* (emphasis added).

Defendants purposefully misconstrue the allegations of the complaint in an effort to sustain their burden of showing that the complaint was properly removed under SLUSA. Defendants, however, ignore that plaintiff's allegations are not based upon an untrue statement or omission in connection with the "purchase or sale" of a security, the essential elements of SLUSA preemption. The complaint alleges a cause of action only for breach of fiduciary duty on behalf of **holders** of certain Putnam mutual funds between January 3, 2000 and September 16, 2003 – not purchasers or sellers. Indeed, given the long-term nature of mutual fund investing, it is likely that many members of the class purchased their mutual fund shares before the class period even begins. Since plaintiff's claim does not involve or seek redress for a material misstatement or omission in connection with the purchase or sale of securities, SLUSA does not apply and plaintiff's complaint should be remanded to state court.

## SUMMARY OF ALLEGATIONS

Plaintiff alleges that defendants breached their fiduciary duty to Putnam's mutual fund shareholders by permitting "market timing" in certain of Putnam mutual funds, a practice which

was not in the best interests of Putnam's long term mutual fund shareholders.[1] ¶14.[2]   Mutual

funds are meant to be long-term investments and are designed for buy-and-hold investors. ¶26.

Nevertheless, quick-turnaround traders routinely try to trade in and out of certain mutual funds in

order to exploit inefficiencies in the way the mutual funds set their Net Asset Value ("NAV") or

daily price. *Id.*

This strategy works because some mutual funds use "stale" prices to calculate the value

of securities held in the fund's portfolio. ¶27.  These prices are "stale" because they do not

necessarily reflect the "fair value" of such securities as of the time the NAV is calculated.[3]  Put

another way, the NAV does not reflect the true current market value of the stocks the fund holds.

*Id.* On such a day, a trader who buys a fund at the "stale" price is virtually assured of a profit

that can be realized the next day by selling.  *Id.*  Taking advantage of this kind of short-term

---

[1]    Defendants inaccurately describe plaintiff's claim as involving, "defendants' fail[ure] to disclose to the investing public and Fund holders that certain customers were authorized to engage in market timing activities."  Defendants' Notice of Removal ("Defts. Not.") at 3. However, the complaint does not allege a claim based on a failure to disclose that Putnam was allowing market timing.  Plaintiff's claim is that Putnam breached its fiduciary duty to the rest of its mutual fund shareholders by allowing the market timing in the first place and by failing to maximize the value of investments in the funds by plaintiff and the class.

[2]    "¶__" refers to a paragraph in plaintiff's complaint, a copy of which is attached at Exhibit A to Defts. Not.

[3]    A typical example is a U.S. mutual fund that holds Japanese shares.  ¶27.  Because of the time zone difference, the Japanese market may close at 2:00 a.m. New York time.  If the U.S. mutual fund manager uses the closing prices of the Japanese shares in his or her fund to arrive at an NAV at 4:00 p.m. in New York, he or she is relying on market information that is fourteen hours old.  ¶27.  If there have been positive market moves during the New York trading day that will cause the Japanese market to rise when it later opens, the stale Japanese prices will not reflect them, and the fund's NAV will be artificially low.  *Id.*

arbitrage repeatedly in a single mutual fund is called "timing" the fund.[4]

Effective timing captures an arbitrage profit which comes dollar-for-dollar out of the pockets of the long-term investors. ¶29. The timer steps in at the last moment and takes part of the buy-and-hold investors' upside when the market goes up, so the next day's NAV is reduced for those who are still in the fund. *Id.* If the timer sells short on bad days – as certain hedge funds did – the arbitrage has the effect of making the next day's NAV lower than it would otherwise have been, thus magnifying the losses that investors are experiencing in a declining market. *Id.*

Indeed, because of the detrimental effect on a fund's long-term shareholders, mutual funds typically maintain policies to monitor and prevent market timing. ¶16. In addition, defendants have employees (generally referred to as the "timing police") who are supposed to ferret out "timers" and put a stop to their short-term trading activity. ¶16.

However, plaintiffs allege that defendants arranged to give its own employees, certain pension and retirement plans and other select fund investors a "pass" with the timing police, who would look the other way rather than attempt to shut down the short-term trading or impose short-term trading fees on such investors. *Id.* By allowing select investors to time its mutual funds, Putnam breached its fiduciary duty to the rest of its mutual fund shareholders -- to maximize the value of their mutual fund shares. ¶21.[5]

---

[4]     A similar type of timing is possible in mutual funds that contain illiquid securities such as high-yield bonds or small capitalization stocks. Here, the fact that some of the fund's securities may not have traded for hours before the New York closing time can render the fund's NAV stale, and thus open it to being timed. ¶28.

[5]     Contrary to defendants' assertion (see Defts. Not. at 4), the fact that the complaint alleges that Defendants were registered investment advisors is not dispositive of the issue of implication of the federal securities laws and this Court's jurisdiction. Defendants owed a fiduciary duty to plaintiff and the class regardless of whether each defendant was a registered investment advisor.

### ARGUMENT

**A.**  **PLAINTIFF'S STATE LAW BREACH OF FIDUCIARY DUTY CLAIM IS NOT PREEMPTED BY SLUSA AS THE COMPLAINT DOES NOT ALLEGE CLAIMS "IN CONNECTION WITH THE PURCHASE OR SALE OF A COVERED SECURITY"**

SLUSA permits the removal of certain securities class actions as defined below:

b) CLASS ACTION LIMITATIONS.--No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State of Federal court by a private party alleging –

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or other contrivance in connection with the purchase or sale of a covered security.

c) REMOVAL OF COVERED CLASS ACTIONS.  Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court in which the action is pending, and shall be subject to subsection (b).

*See* 15 U.S.C. §§77p(b) and (c), 78bb(f)(1) (emphasis added).

Under SLUSA, the burden rests with the party seeking removal to demonstrate that: 1) the class action sought to be removed is a covered class action; 2) the class action complaint is based on state law claims; 3) there has been *a purchase or sale* of a covered security; and 4) in connection with that *purchase or sale*, plaintiffs allege that defendants either "misrepresented or omitted a material fact" or "used or employed any manipulative or deceptive device or other contrivance." 15 U.S.C. §§77p(b), 78bb(f)(1) (emphasis added); *See also Burns v. Prudential Securities*, 116 F. Supp. 2d 917, 921 (N.D. Ohio 2000).

SLUSA does not define the meaning of "in connection with the purchase or sale" of a covered security.  However, since this language is similar to the language of Section 10(b) of the

Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5,[6] courts have looked at decisions interpreting those provisions for guidance in construing SLUSA. *See Green v. Ameritrade, Inc.,* 120 F. Supp. 2d 795, 798 (2000), *aff'd,* 279 F.3d 590, 598-99 (8th Cir. 2002); *Burns,* 116 F. Supp. 2d at 923.

Courts will not find the "in connection with" requirement satisfied where no purchase or sale of a security has been transacted ***by the claimant*** who seeks damages under Section 10(b) or Rule 10b-5. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461, 464 (2d Cir. 1952).

Plaintiff does not dispute that Putnam mutual fund shares constitute a "covered security" within SLUSA. However, plaintiff's claim does not involve the "purchase or sale" of a security, an essential element of a "covered class action." The complaint alleges a cause of action under state common law based only on breach of fiduciary duty for a proposed class of <u>holders</u> of certain international Putnam mutual funds. ¶¶13, 66.

No allegation is made that plaintiff bought or sold covered securities in reliance on defendants' alleged misrepresentations. Instead, the complaint focuses on defendants' conduct ***after*** plaintiff and the Class members invested in the Putnam funds at issue. Plaintiff alleges that the value of the Putnam funds was *lower* as a result of defendants' breach of fiduciary duty. Indeed, "by allowing select investors to time its mutual funds, Putnam breached its duty to the majority of its mutual fund shareholders to maximize the value of their mutual fund shares." ¶16.

---

[6]      Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 prohibit fraudulent acts "in connection with the purchase or sale of any security." 15 U.S.C. §78j; 17 C.F.R. §240.10b-5.

Since plaintiff's claim does not involve the purchase or sale of securities, SLUSA preemption does not apply. *See, e.g., Feitelberg v. Credit Suisse First Boston LLC*, 2003 U.S. Dist. LEXIS 19116 (N.D. Cal. Oct. 24, 2003) (court held that SLUSA did not apply to claims brought on behalf of holders of securities); *Green v. Ameritrade, Inc.*, 279 F.3d at 598-99 (investor's complaint did not satisfy the criteria for SLUSA preemption because claim was that investor had not received the type of information from the broker for which he believed he had contracted for; nothing in complaint suggested that the cause of action arose from a sale or purchase of a security); *Spehar v. Fuchs*, 2003 U.S. Dist. LEXIS 10406, at *25-30 (S.D.N.Y. June 17, 2003) (proposed amendment of complaint which removed allegations for purchasers of securities, leaving only allegations for holders of securities, would not be subject to removal under SLUSA); *Shaev v. Claflin*, 2001 U.S. Dist. LEXIS 6677, at *18-19 (N.D. Cal. 2001) (defendants could not show propriety of removal under SLUSA in case alleging claims on behalf of holders of 3Com stock); *Gutierrez v. Deloitte & Touche, L.L.P.*, 147 F. Supp. 2d 584, 595 (W.D. Tex. 2001) (SLUSA inapplicable to claims seeking damages for being fraudulently induced to hold stock); *Gordon v. Buntrock*, 2000 U.S. Dist. LEXIS 5977, *12-13 (N.D. Ill. 2000) (claims for breach of fiduciary duty for holders of Waste Management securities not subject to SLUSA's removal provisions because plaintiff was not seeking "purchaser/seller" damages arising out of alleged fraud); *Burns v. Prudential Securities*, 116 F. Supp. 2d at 922-23 (removal of state court claims for, among other things, breach of fiduciary duty was improper); *Hines v. ESC Strategic Funds, Inc.*, 1999 U.S. Dist. LEXIS 15790, at *16 (M.D. Tenn. 1999) (SLUSA does not apply to state law claims for breach of fiduciary duty that occurred after the purchase or sale of securities in question); *Lalondriz v. USA Networks*, 68 F. Supp. 2d 285, 286

(S.D.N.Y. 1999) (holding remand was appropriate and SLUSA did not apply because plaintiffs' petition stated no claim for the purchase or sale of a covered security).[7]

Defendants cite *SEC v. Zandford,* 535 U.S. 813, 819 (2002) in support of their position that the "in connection with" requirement is satisfied here. However, *Zandford* is not applicable to plaintiff's claim. The Court in *Zandford* held, in the context of Rule 10(b) of the Exchange Act, that the "in connection with" requirement was satisfied when, "the scheme to defraud and the sale of securities coincide." In *Zandford,* plaintiff alleged that the defendant broker engaged in a fraudulent scheme in which the broker sold his clients' securities without their knowledge or consent and then made personal use of the proceeds. Here, there were no purchases or sales of securities *by the plaintiff,* (or class members) or on behalf of the plaintiff (or class members) by the defendants, which coincided with defendants' breach of their fiduciary duty to plaintiff and the Class. The allegation here is that defendants gave preferential treatment or a "pass" to certain customers to engage in timing and that plaintiff and the class, who were not given such a pass, were thereby damaged. The required nexus between the alleged breach of fiduciary duty and plaintiff's security transaction is missing. Therefore, *Zandford* is not controlling.[8]

### B.   REMOVAL WAS IMPROPER BECAUSE DEFENDANTS HAVE FAILED TO SHOW THAT FEDERAL JURISDICTION EXISTS

Defendants bear the burden of establishing the facts necessary to show that federal jurisdiction exists. *See, e.g., Danca v. Private Healthcare Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.

---

[7]   *See also Shaw v. Charles Schwab & Co.,* 128 F. Supp. 2d 1270, 1273-74 (C.D. Cal. 2001) (SLUSA did not preempt plaintiffs' state law claims relating to defendants' commission rate for web-based trading and the efficacy of defendants' web-based trading system); *Simon v. Internet Wire, Inc.,* 2001 U.S. Dist. LEXIS 4086, at *8-9 (C.D. Cal. 2001) (motion to remand state claims under SLUSA granted because claims did not allege securities fraud).

[8]   Indeed, the Court in *Zandford,* explicitly states, "[O]ur analysis does not transform every breach of fiduciary duty into a federal securities violation." *Zandford,* 535 U.S. at 825, n.4.

1999); *BIW Deceived v. Local S6*, 132 F.3d 824, 831 (1st Cir. 1997). Removal statutes should be strictly construed against removal and doubts resolved against removal and in favor of remanding the case back to state court. *See Therrien v. Hamilton*, 881 F. Supp. 76, 78 (D. Mass 1995); *American Bldgs. Co. v. Varicon, Inc.,* 616 F. Supp. 641, 643 (D. Mass. 1985) (Young, J.); *accord Danca*, 185 F.3d at 4.

Indeed, plaintiff could not have brought this claim under the federal securities laws even if she wanted to since it does not involve her purchase or sale of securities.[9] Defendants should not be permitted to circumvent the limits of federal jurisdiction through removal. Defendants have not shown that removal would be proper here since they have not established that plaintiff brought her breach of fiduciary duty claim "in connection with the purchase or sale of securities."

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this motion be granted and that this action be remanded to Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, together with such other and further relief as this Court deems just and proper.

Dated: December 11, 2003

BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO

Norman Berman, BBO #040460
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

**CERTIFICATE OF SERVICE**
I hereby certify that on *December 11, 2003*
a true copy of the above document was
served by mail/by hand upon the attorney
of record for each other party per the
attached service list.

---

[9]    Had she done so, Defendants would have undoubtedly moved to dismiss and argued that she did not state a claim for relief under the federal securities laws.

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox
Joel B. Strauss
Christine M. Fox
805 Third Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

KAPLAN FOX & KILSHEIMER LLP
Laurence D. King
555 Montgomery Street, Suite 1501
San Francisco, CA 94111
Tel: (415) 772-4700
Fax: (415) 772-4707

Law Office of Kenneth A. Elan
217 Broadway, Suite 606
New York, NY 10007
Tel: (212) 619-0261
Fax: (212) 385-2707

*Counsel for Plaintiff and the Proposed Class*

G:\Securities\Putnam\State (Meyer)\DraftPleadings\Draft Remand Motion.doc

## SERVICE LIST

Norman Berman, Esq.
**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

Kenneth A. Elan, Esq.
**LAW OFFICE OF KENNETH A. ELAN**
217 Broadway, Suite 606
New York, NY 10007
Telephone: (212) 619-0261

Frederic S. Fox, Esq.
Joel B. Straus, Esq.
Christine M. Fox, Esq.
**KAPLAN FOX & KILSHEIMER LLP**
805 Third Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 687-1980

Laurence D. King, Esq.
**KAPLAN FOX & KILSHEIMER LLP**
555 Montgomery Street, Suite 1501
San Francisco, CA 94111
Telephone: (415) 772-4700

*Plaintiffs Counsel*

John F. Sylvia, Esq.
**MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C**.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000

*Counsel for Justin M. Scott*

John A.D. Gilmore, Esq.
**PIPER RUDNICK**
One International Place, 21st Floor
Bosotn, MA 02110-2600
Telephone: (617) 406-6000

*Counsel for Omid Kamsha*


John d. Donovan, Jr., Esq.
Richard D. Batchelder, Jr., Esq.
**ROPES & GRAY**
One International Place
Boston, MA 02110-2624
Telephone: (617) 951-7000

*Counsel for the Putnam Fund Defendants*


Seth M. Schwartz, Esq.
Betsy A. Hellman, Esq.
**SKADDEN, ARPS, SLATE,MEAGHER & FLOM**
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000

*Counsel for the Putnam Management Defendants*