IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROCHELLE MEYER, ROTH IRA CUSTODIAN,
On Behalf of Herself and All Others Similarly
Situated,

    Plaintiff,

v.

PUTNAM INTERNATIONAL VOYAGER
FUND n/k/a PUTNAM INTERNATIONAL
CAPITAL OPPORTUNITIES FUND, PUTNAM
EUROPE GROWTH FUND n/k/a PUTNAM
EUROPE EQUITY FUND, PUTNAM
INTERNATIONAL GROWTH FUND n/k/a
INTERNATIONAL EQUITY FUND, PUTNAM
GLOBAL EQUITY FUND, PUTNAM
INVESTMENT MANAGEMENT TRUST,
PUTNAM INVESTMENT MANAGEMENT
LLC, MARSH & MCLENNAN CORP., INC.,
OMID KAMSHAD, and JUSTIN M. SCOTT,

    Defendants.

No. 03 CV 12214 (WGY)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### Preliminary Statement

There are two separate and independent grounds for removing this action to federal court. First, the action presents questions regarding the interpretation and application of a comprehensive set of federal laws governing mutual fund pricing. Second, Plaintiff's complaint, fairly read, implicates claims arising out of alleged fraudulent or deceptive practices in connection with the purchase and sale of those mutual fund shares. It is therefore subject to exclusive federal jurisdiction under the broad removal provisions of the Securities Litigation Uniform Standards Act 1998, Pub.

- 1 -

L. 105-353, 112 Stat. 3227 (1998) ("SLUSA"). In her motion to remand, Plaintiff focuses attention exclusively on the second ground for removal and completely ignores the first. She therefore misses entirely the point that this case, like the scores of other "market-timing" cases filed in federal courts across the country, are well within this Court's original jurisdiction.

In attempting to remand this case to the state court, Plaintiff focuses solely on SLUSA's broad removal provisions and seeks to recast her complaint as one by "holders," and not "purchasers" of securities. That effort to avoid SLUSA does little to distract from the central federal concerns at issue in this case. All of the scores of actions related to market-timing share a central focus on the manner in which shares of mutual funds are priced and the alleged arbitrage opportunities that rise from those pricing procedures. Those mechanisms are creatures of a federal regulatory system. Indeed, it is because all of the market-timing cases share this common feature that Defendants have moved the Panel on Multidistrict Litigation (the "MDL Panel") to consolidate these cases in a single federal jurisdiction. Plaintiff's effort to avoid the sweep of this consolidation through revisionist pleading should not be countenanced.

## I.   PLAINTIFF'S ACTION PRESENTS SUBSTANTIAL FEDERAL QUESTIONS

A defendant may remove to federal court "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the . . . laws of the United States. . . ." 28 U.S.C. § 1441(b). A court may have original jurisdiction "arising under" federal law where the vindication of a plaintiff's alleged state law cause of action turns on the interpretation of federal law. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808–09 & n.5 (1986). The First Circuit has recently noted that,

while this doctrine should be carefully applied, it "remains vibrant in this circuit." *Metheny v. Becker*, ___ F.3d ___, 2003 WL 229227857 at *2 (1st Cir. Dec. 12, 2003). It should be applied in this case because the duties allegedly breached by Defendants are wholly created by federal law and, consequently, federal law will have to be interpreted in order to determine whether a breach of duty occurred.

While the question whether a complaint arises under federal law is answered with reference to the "well-pleaded complaint," *Merrel Dow Pharms*, 478 U.S. at 808, a plaintiff may not avoid federal jurisdiction on the basis of "artful pleading." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997). Put simply, a plaintiff cannot disguise the federal aspect of her claim by failing to mention the operative federal regulations. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983). Here, despite Plaintiff's failure to reference specific federal statutes, it is clear that her claim arises under federal law.

Like the many other complaints filed against Defendants in federal courts around the country, Plaintiff's complaint, at bottom, alleges that Defendants failed to control market timing in Putnam mutual funds by various individuals and entities. As alleged in Plaintff's complaint, market-timing occurs when investors exploit "arbitrage" opportunities that arise from anomalies in the daily pricing of assets held by mutual funds. Specifically, Plaintiff alleges that Defendants on occasion used "stale" prices in setting net asset values ("NAVs"), which created arbitrage opportunities that certain investors took advantage of with Defendants' consent. Plaintiff's complaint elides the fact that pricing of mutual fund assets is a process closely regulated by the federal

government pursuant to the Investment Company Act of 1940, 15 U.S.C. 80a-1, *et seq.* (the "ICA"), and regulations promulgated thereunder. Resolution of these market-timing allegations will require a court to measure the Defendants' conduct against the standards set in federal laws and regulations regulating the valuation of mutual fund assets. That makes this case removable under 28 U.S.C. § 1441(b).

### A. Plaintiff's Complaint Implicates Duties Created by Federal Regulations Concerning "Fair Value"

While assiduously avoiding mention of the applicable federal laws and regulations by name, Plaintiff's allegations clearly raise questions that will require a court to interpret those provisions. In both the Complaint and the Memorandum in support of the Motion to Remand, Plaintiff describes the "arbitrage" opportunity created by the NAV pricing of mutual funds. (Compl. ¶¶ 26–29; Plaintiff's Memorandum at 2–4.) The Complaint then states that "mutual fund managers, including Putnam, are *required* to update NAVs at the end of the day in New York when there have been market moves that might render the NAV stale. This is called giving the fund a 'fair value.'" (Compl. ¶ 32 (emphasis added).) What Plaintiff leaves out is that the requirement that fund managers update NAVs is governed by a set of *federal* statutes and regulations. Specifically, the ICA provides that fund assets are to be valued according to market quotations or, where such quotations are not available, "fair value as determined in good faith by the board of directors." 15 U.S.C. § 80a-2(41)(B). Pursuant to power delegated to it under the ICA, the SEC has promulgated rules defining NAV and indicating under what conditions NAVs should be set. 17 C.F.R. § 270.2a-4. The requirement that NAVs be set at a designated time is likewise drawn from federal regulations requiring that NAVs of mutual funds be set at particular times defined by the fund's board of directors. *See* 17

- 4 -

C.F.R. § 270.22c-1(b). Moreover, the very purpose of the comprehensive system governing the pricing of mutual fund shares is the reduction in dilution of asset value that is unfair to shareholders. *See* 15 U.S.C. § 80a-22(a), (c).

That the pricing of mutual fund shares and duty to avoid shareholder dilution is a quintessentially federal matter is demonstrated by the substantial federal effort made to regulate the area. By way of example, the industry has been in a dialog with the SEC about the appropriate parameters of the requirement to "fair value" securities at times when NAVs may not reflect "significant events" that have occurred after the close of foreign markets. *See* Investment Company Institute, SEC No-Action Letter, 2001 SEC No-Act. LEXIS 543, at *3–*5 (Apr. 30, 2001); Investment Company Institute, SEC No-Action Letter, 1999 SEC No-Act. LEXIS, at *8–10 (Dec. 8, 1999). What is more, the SEC is moving to regulate funds' share pricing and anti-dilution efforts even more closely. Only recently, on October 9, 2003, SEC Chairman Donaldson issued a statement in which he announced, among other things, that:

> The staff is considering new rules and form amendments that would curb market timing abuses, including rules and form amendments that would:
>
> - require explicit disclosure in fund offering documents of market timing policies and procedures;
>
> - require funds to have procedures to comply with representations regarding market timing policies and procedures;
>
> - emphasize the obligation of funds to fair value their securities under certain circumstances to minimize market timing arbitrage opportunities; and
>
> - reinforce the obligation of fund directors to consider the adequacy and effectiveness of fund market timing practices and procedures.

*See* www.sec.gov/new/press/2003 .

It is axiomatic that for Plaintiff to state a claim for breach of fiduciary duty against Defendants, she must first demonstrate that Defendants owe a duty to her. *See Irwin v. Town of Ware*, 392 Mass. 745, 754 (1984). However, the duties alleged by Plaintiff in this action all derive from the federally-created obligations to fair value fund assets and limit shareholder dilution. After describing the fair valuation obligations they allege are created by the federal scheme, Plaintiff alleges that "[a]s fiduciaries for their investors, mutual fund managers, including Defendants, are *obliged* to do their best to use these weapons to protect their customers from the dilution that timing causes." (Compl. ¶ 32 (emphasis added).) Indeed, Plaintiff's claim for relief states that "*as a registered investment advisor*, Defendants had a *legal fiduciary duty* to act in the best interests of its shareholders at all times and to place their clients' interests above all others." (Compl. ¶ 69 (emphasis added).)[1] Though they omit any citation to federal law, an "investment advisor" is a federally-defined and regulated classification. *See* 15 U.S.C. § 80b-2(20). Consequently, the obligations and duties that Plaintiff alleges were breached are drawn from a federal regulatory scheme.

Because Plaintiff's tort claim relies on federal law for an essential element, it "arises under" federal law. *See D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 102–03 (2d Cir. 2001) (holding that state law claim turning on allegation that defendant failed to perform a statutory duty under Exchange Act arose under federal law); *see also, e.g., Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998) ("[A]lthough Sparta's theories are posited as state law claims, they are founded on

---

[1] Though Plaintiff's complaint names as defendants individual mutual funds, Putnam Investment Management LLC, other entities and individuals, it does not distinguish between these entities and individuals in its allegations and claims for relief. Defendants do not concede the accuracy of any of Plaintiff's allegations.

the defendants' conduct in suspending trading and de-listing the offering, the propriety of which must be exclusively determined by federal law.")

**B.    Like the Many Other Market-Timing Class Actions Recently Filed, this Case Belongs in Federal Court.**

Against this backdrop of federal regulation and oversight, it is not surprising that hundreds of cases have been filed in federal courts around the country against mutual fund companies alleging market timing. As to the actions filed against Defendants relating to market-timing in the Putnam mutual fund complex, Defendants have filed a motion with the MDL panel seeking to coordinate and consolidate all of these federal cases and transfer them to this District. Plaintiff's claim implicates fundamentally the same issues as all of these cases for which consolidation is being sought. It would be anomalous and inconsistent with the purpose of the MDL process to permit this action to be remanded and proceed separately from those related actions.

**II.    THE ACTION IS PROPERLY REMOVED UNDER SLUSA.**

SLUSA authorizes the removal to federal court of any "covered class action" in which a private party alleges: (i) "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security;" or (ii) "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase of sale of a covered security." 15 U.S.C. § 77p.[2] Pursuant to SLUSA's

---

[2] Plaintiff apparently does not contest that her action is both a "covered class action" and that it involves "covered securities." Nor could she. A "covered class action" is one in which "damages are sought on behalf of more than 50 persons or prospective class members," or where "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated," and common questions of law and fact predominate over questions affecting individual persons or class members."  15 U.S.C. § 78bb(f)(5)(B)(I) & (II). Plaintiff has brought this action on a representative basis, seeking damages on behalf of herself and others similarly situated, and alleges that common questions of fact and law predominate. See Compl. ¶¶ 66–67. While Defendants in no way concede that this action is properly brought as a class action, it is clearly a "covered class action" for SLUSA purposes.

broad grant of federal jurisdiction over actions just like this, this action has been removed properly to this court as it involves allegations that the Defendants "[1] misrepresented or omitted a material fact [2] 'in connection with the purchase or sale of such security.'" *Riley v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342 (11th Cir. 2002).

### A. SLUSA's Removal Provision Should be Construed Broadly to Effect its Remedial Purpose.

A proper construction of SLUSA's terms can only be made with reference to the history of Congress's efforts to control class action securities litigation. In 1995, Congress adopted the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737 (1995). This legislation imposed heightened pleading standards and discovery limitations on securities fraud class actions brought in federal courts. *See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122 (2003). Congress soon found that litigants simply avoided the PSLRA's requirements by filing their suits in state courts under state securities laws instead. *Id at 123*. SLUSA was Congress's legislative response to this "loophole." *Id.* In light of this history, SLUSA should be "viewed as part of the remedial package of federal securities laws and should be construed accordingly." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129 (9th Cir. 2002). As SLUSA is a remedial statute aimed at alleviating a particular social ill, its provisions ought be read broadly to effectuate Congress's intent. *See McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161, 174 (1st Cir. 1987). Properly construed, it is clear that SLUSA's provisions apply to this action.

---

Likewise, a "covered security" includes securities issued by investment companies that, like Putnam, are registered under the Investment Company Act of 1940. 15 U.S.C. §§ 78bb(f)(5)(E); 15 U.S.C. § 77r(b)(2). Shares of Putnam Funds are therefore "covered securities" as defined by SLUSA.

## B. Plaintiff's Claims Are for Wrongdoing In Connection with the Purchase or Sale of Securities.

In keeping with the mandate that SLUSA's provisions be read broadly, the statutory language that permits removal of claims for misrepresentation, omission or fraud "in connection with the purchase or sale of a covered security," *see* 15 U.S.C. § 77p, should likewise receive a broad construction. *See Falkowski*, 309 F.3d at 1129. The phrase "in connection with the purchase or sale of a covered security" tracks the language of 17 C.F.R. § 240.10b-5. Courts have commonly used cases construing Rule 10b-5 to illuminate the meaning of the identical terms in SLUSA. *See Riley*, 292 F.3d at 1342. As the Supreme Court recently reaffirmed, the phrase is to be construed broadly and flexibly and technical or restrictive readings should be eschewed. *See SEC v. Zandford*, 535 U.S. 813, 819–20 (2002). When so construed, it is clear that Plaintiff's action falls within the definition of a claim for misrepresentation, omissions or fraudulent activity "in connection with the purchase or sale" of fund shares.

As the Supreme Court held in *Zanford*, the "in connection with" requirement is satisfied where, as here, the complaint describes "a fraudulent scheme in which *the securities transaction and [alleged] breaches of fiduciary duty coincide.*" 535 U.S. at 825. That is precisely what has been described by the complaint in this case.

According to Plaintiff, Defendants purportedly breached duties owed to long-term fund shareholders by permitting market timers to rapidly buy and sell fund share at "stale" prices that did not reflect the actual market value of the shares. Plaintiff further alleges that this improper trading activity between the funds and market timers enabled the latter to profit at the expense of long-term investors such as plaintiff. As stated by Plaintiff: Defendants "breached their fiduciary duties to Putnam's mutual fund

shareholders by allowing certain select investors and Putnam fund managers to market time and short term trade in Putnam mutual funds including the Putnam International Voyager Fund and other International funds (as set forth herein) to the detriment of Putnam's long-term mutual fund shareholders." (Compl. ¶ 40) Plaintiffs also allege that defendants wrongfully concealed this purported market-timing activity, including trades purportedly made by Putnam fund managers on the basis of material, undisclosed, non-public information. (*Id.* ¶¶ 65, 77-91) Thus, the complaint, at its core, alleges that Plaintiff, in her capacity as fund shareholder, was injured in connection with fraudulent and manipulative securities transactions between the funds and market timers. In this way, Plaintiff claims that the funds' manipulative securities transactions and defendants' alleged breaches of duty coincided, thereby plainly – and easily – satisfying the "in connection with" requirement of SLUSA.

Plaintiff attempts to avoid SLUSA by contending that the complaint contains no allegation "that plaintiff bought or sold covered securities in reliance on defendants' alleged misrepresentations." (Plaintiff's Memorandum at 6) But this argument ignores the gravamen of the complaint, which is that plaintiff was injured as a result of fraudulent and manipulative securities transactions between the Putnam funds in which she invested and other fund investors who supposedly received favored treatment. As a matter of law, the "purchaser/seller" requirement of Rule 10b-5 – and consequently, SLUSA – is satisfied where as here, the shareholder/beneficiary of a trust alleges she was injured by manipulative securities transactions involving the trust that were engineered by the managers/trustees of the trust. *E.g., Kirshner v. United States*, 603 F.2d 234, 240-41 (2d

Cir.), *cert. denied*, 442 U.S. 909 (1978); *Lawrence v. Cohn*, 932 F. Supp. 564, 572-73 (S.D.N.Y. 1996). As explained by the court in *Lawrence*:

> "The purchaser-sale requirement must be interpreted so that the broad design of the Exchange Act, to prevent unfair and practices on securities exchanges and over-the-counter markets, is not frustrated by the use of novel or atypical transactions." The rule allowing shareholders ... to sue their respective fiduciaries derivatively for violations of section 10(b) recognizes that the "broad design of the Exchange Act" would be undercut if the [purchaser/seller] language of Blue Chip Stamps [v. Manor Drugs, 421 U.S. 723, 731 (1975)] were applied literally to deny standing. It is the shareholders ... who are, at bottom, hurt by a fiduciary's violation of 10(b). Yet, without standing, they cannot obtain the relief they deserve . . . .

932 F. Supp. at 572 (citations omitted).

In this case, defendants Putnam International Voyager Fund, Putnam Europe Growth Fund, Putnam International Growth Fund and Putnam Global Equity Fund are all Massachusetts business trusts. As alleged in the complaint, plaintiff was a shareholder of one of the trusts, Putnam International Growth Fund, during the putative class period (*see* Compl. ¶ 1), and therefore also was a beneficiary of the trust. Plaintiff further alleges that defendant Putnam Investment Management LLC, as manager/trustee of the Putnam funds/trusts, engaged in a fraudulent and manipulative scheme to permit the funds to purchase and sell shares at stale prices to market timers, thereby injuring plaintiff and other long term fund shareholders. In short, plaintiff alleges fraud in connection with the management of trust assets, including the purchase and sale of trust shares, an allegation that plainly satisfies the "in connection with" requirement of Section 10(b) and SLUSA. *Kirschner*, 603 F.2d at 240; *Lawrence*, 932 F. Supp. at 573.

## C. Plaintiff Fails to Clearly Demarcate a "Holder" Class.

Consistent with the requirement that the SLUSA's provisions be read broadly, Courts have taken a broad view of whether putative class actions encompass the claims of buyers or sellers. Thus, where a plaintiff's claims are not carefully limited to exclude all claims based on the purchase or sale of securities, the action is properly removed under SLUSA. *See Professional Mgmt. Assocs., Inc. v. Employees' Profit Sharing Plan*, 335 F.3d 800, 803 (8th Cir. 2003); *Riley*, 292 F.3d at 1345 (citing *Gutierrez v. Deloitte & Touche, L.L.P.*, 147 F. Supp. 2d 584, 593 (W.D. Tex. 2001)); *Cape Ann Investorsr LLC v. Lepone*, ___ F. Supp. 2d ___, No. CIV. 00-11531-RGS, 2003 WL 22946491 at *4 (D. Mass. Dec. 15, 2003); *Hardy v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, F. Supp. 2d 14, 19 (S.D.N.Y. 2001). Here, Plaintiff's complaint fails to clearly exclude claims governed by SLUSA and federal jurisdiction is appropriate.

Plaintiff's argument that the action is not subject to removal under SLUSA because it is only on behalf of a "proposed class of <u>holders</u> of certain international Putnam mutual funds" is belied by the face of its class action complaint. Plaintiff defines the putative class as

> . . . all holders of the Putnam International Voyager Fund, Europe Growth Fund, International Growth Fund, and the Global Equity Fund between January 3, 2000 and September 16, 2003 (except the defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants and those who have engaged in the wrongful activities described herein) and their successors in interest, who are or will be threatened with injury arising from defendants' actions as more fully described herein (the "Class").

(Compl. ¶ 66.) Significantly, this proposed class is *not* confined to persons or entities that held shares *continuously* between January 3, 2000 *through* September 16, 2003.

This is a significant point, as Plaintiff has not -- as she is required to do under applicable case law -- excluded from the putative class persons or entities who may have bought or sold shares within the putative class period.

This is no mere semantic distinction. Courts have consistently imposed a requirement that plaintiffs make clear that their complaints do not allege claims in connection with purchases or sales in order to avoid SLUSA. For example, in *Feitelberg v. Credit Suisse First Boston LLC*, No. C 03-3451, WL 22434098, at *3 (N.D. Cal. Oct. 24, 2003), the complaint's class allegations indicated that "[t]he class specifically excludes claims based upon the purchase or sale of shares" during the class period. To similar effect is *Chinn v. Belfer*, No. Civ. 02-00131-ST, 2002 WL 31474189 (D. Or. June 19, 2002), where the complaint explicitly indicated that it "specifically exclude[d] claims based upon the purchase or sale of Enron securities." *See also Gordon v. Buntrock*, No. 00 CV 303, 2000 WL 556763, at *3 (N.D. Ill. 2000) (finding action not preempted by SLUSA where plaintiff "expressly disavows any injury resulting from the purchase or sale of securities").

Plaintiff's complaint lacks this essential clarity. Not only is the extent of the "holder" class unclear, but the alleged damages encompass harms related to the purchase or sale of securities. Plaintiff's "holder" class definition also encompasses persons who purchased and/or sold shares of the Funds during the putative class period. Specifically, Plaintiff's Prayer for Relief goes on to request an order "directing that defendants pay to plaintiff and the other members of the Class *all* damages caused to them as a result of defendants' unlawful conduct," *Id.* at 20 (emphasis added), and the Complaint alleges that, among those damages are that "the NAV or price of the shares of the Putnam

International Voyager Fund, Europe Growth Fund, International Growth Fund and the Global Equity Fund were lower than they might otherwise have been." (Compl. ¶ 79.) Consequently, for those "sellers" that fall within the vague class of "holders," Plaintiff's complaint seeks alleged damages potentially caused by selling securities at an artificially low price. Because Plaintiff's claim for relief does not limit damages to those derived solely from holding, it falls within SLUSA's ambit. More importantly, Plaintiff's complaint offers no mechanism for distinguishing between those putative class members whose damages are limited to those caused by holding and those whose damages encompass those caused by purchase or sale of securities.

This case is, therefore, like *Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 189 F. Supp. 2d 14 (S.D.N.Y. 2001). In *Hardy*, the plaintiffs purported to sue on behalf of a class of persons who alleged that Merrill Lynch breached its fiduciary duties to the class by failing to change a stock recommendation in order to obtain further underwriting business, and that Merrill Lynch's alleged breach of duties had induced plaintiffs to hold the stock. *Id.* at 15-16. The court found that at least part of the proposed class—*i.e.*, holders who had purchased their stock after Merrill Lynch's recommendation became inaccurate—would have cognizable federal securities claims. *Id.* at 18-19. Because the complaint contained too little information to determine which class members had only non-preempted state-law holder claims, the court denied the plaintiffs' motion to remand. *Id.* at 19-20.

A similar result was recently reached by a court in this District. In *Cape Ann Investors LLC v. Lepone*, No. 00-11531-RGS, slip. op. (D. Mass 2003) (attached hereto as Tab "A"), the court considered the claims of a putative class that alleged that class

members retained shares of a corporation as a result of alleged misrepresentations. However, the putative class extended not just to those who had held shares, but those who had been induced to buy shares. As the Complaint "offere[ed] no means of distinguishing the [shareholders] who were persuaded . . . to buy shares from those who were induced to hold their previously acquired . . . stock," the court ruled that SLUSA precluded remand. *Id.* at 9.

Given the ambiguity of Plaintiff's complaint, the present case is also like the case of *Coy v. Arthur Andersen*, Case No. 01-4248 (S.D. Tex. Feb. 6, 2002) (attached hereto as Tab "B"). In that case, the plaintiffs purported to sue on behalf of a class consisting of "'[a]ll shareholders who own, or owned, Enron stock since January 1, 1997, and have suffered a decline in value of the stock because of the actions of [Arthur] Anderson.'" *Id.* at 16. The court agreed with the defendants' contentions in support of their removal motion that the purported class, as defined, could include those who had purchased shares *after* the beginning of the class period as well as those who sold their shares *during* the class period. *Id.* at 16–17. The court explained that "the ambiguous loose construction and language of the class definition can be read to include not only shareholders who purchased their stock before or on January 1, 1997 and still own it but persons who bought and 'owned' the stock since January 1, 1997, and other in both these categories who sold it after the alleged misrepresentations." *Id.* at 18. Since the class as defined included purchasers and sellers, the court concluded that remand was not permitted.

This sort of ambiguity is contrasted with those cases in which courts were able to discern clear classes of holders exempt from SLUSA requirements. In those cases, the fact that the putative class is defined as "holders" rather than buyers an sellers is made

absolutely clear on the face of the complaint. Where, as here, Plaintiff has provided no clear method for dividing the putative class between holders not subject to SLUSA and buyers or sellers who are subject to SLUSA, the entire action is subject to removal to the federal court. *See Riley*, 292 F.3d at 1334.

## Conclusion

Given Plaintiff's failed efforts to recast her claim as a "holder" action under state law, it is clear that this case is federal in nature. Indeed, it is kindred with the many other cases already pending in the federal courts and subject to forthcoming action by the MDL panel. Just as long-established federal law requires a court to consider whether a claim is truly federal despite a plaintiff's efforts to obscure a federal question through artful pleading, it should not be the case that a Plaintiff may plead artfully to avoid consolidation with other class actions that also clearly implicate federal law. Consequently, Plaintiff's motion should be denied.

Respectfully submitted,

ROPES & GRAY LLP

By: _____

John D. Donovan (BBO # 130950)
One International Place
Boston, Massachusetts 02110
(617) 951-7000
*Attorneys for the Putnam Fund Defendants*

SKADDEN ARPS SLATE MEAGHER & FLOM LLP

By: _____

James R. Carroll (BBO # 554426)
One Beacon Street
Boston, Massachusetts 02108
*Attorneys for the Putnam Management Defendants*

PIPER RUDNICK LLP

By: _____

John A.D. Gilmore (BBO # 478680)
One International Place
Boston, Massachusetts 02110
(617) 406-6000
*Attorneys for Omid Kamshad*

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.

By: _____

John F. Sylvia (BBO # 555581)
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
*Attorneys for Justin Scott*

WILLKIE FARR & GALLAGHER LLP

By: _____

Stephen W. Greiner
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000
*Attorneys for Marsh & McClennan Cos., Inc.*

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.
Date: 1/09/04 _____

- 17 -